UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,            Case No. 19-CR-02

vs.

ALEXANDER P. BEBRIS,

                Defendant.

---

## DEFENDANT'S SUPPLEMENTAL REPLY BRIEF REGARDING HIS MOTION TO SUPPRESS

---

Alexander P. Bebris, by and through his attorneys Gimbel, Reilly, Guerin & Brown LLP, submits the following supplemental reply brief in support of his motion to suppress evidence and statements, pursuant to the Fourth, Fifth and Sixth Amendments of the United States Constitution, *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507 (1967), and *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402 (1989). This reply brief will address the arguments laid forth in the government's response brief filed on January 17, 2020.

## ARGUMENT

Overall, given the level of intrusion into private communications that occurred in this case, there should be some level of scrutiny by the courts in matters such as this one. The government summarily dismisses this contention, and instead argues that the Court

1

should simply take Facebook at its (now-edited) word, and assume that no coordination exists or existed between Facebook's actions and law enforcement.

The government's arguments are flawed for many reasons, including the facts that the evidence in the record is inadequate to address the issues at hand or, alternatively, that Facebook acted as an agent of the government. Additionally, Facebook's declarations are insufficient and unreliable, and law enforcement did not act in good faith.[1]

## I. The Evidence in the Record is Inadequate to Address the Pertinent Issues.

The Government contends that "Bebris bears the burden of establishing" (1) that he had a reasonable expectation of privacy in the private Facebook messages in question; (2) that Facebook acted as NCMEC's agent; and (3) that NCMEC acted as a government agent. (Doc. #54 at 3-4).

First, the record demonstrates that Bebris had a reasonable expectation of privacy in Facebook messages. Bebris reasserts the arguments laid forth in his original brief regarding this expectation. (Doc. #30 at 17-19).[2] Additionally, Bebris reiterates and

---

[1] Additionally, throughout its brief, the government relies heavily on Facebook's declarations. Bebris maintains his position that the declarations are inherently unreliable and inaccurate, and the Court should not rely on the statements provided therein, as addressed in Bebris's reply brief regarding Facebook's motion to quash. Rather, the Court should require Facebook to produce live testimony regarding the issues at hand.

[2] Particularly, Bebris reasserts that private Facebook messages are akin to email communications. The Sixth Circuit has found that an individual contains a reasonable expectation of privacy, and other courts have noted the importance of determining how the Fourth Amendment applies to modern day technology. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010); *U.S. v. Keith*, 980 F.Supp.2d 33, 39 (D. Mass. 2013) ("Email has become one of the most common forms of communication, but courts have yet to come to a consensus regarding whether and to what extent a sender has, for Fourth Amendment purposes, a reasonable expectation of privacy in email committed to the custody of an ESP.") (citing *Rehberg v. Paulk*, 611 F.2d 828 (11th Cir. 2010), *aff'd*, 566 U.S. 356, 132 S.Ct. 1497 (2012)).

2

emphasizes that Facebook portrays to its users that the users' data is safe and private. For instance, Facebook recently shared the following message with its users:



Andrew Hutchinson, *Facebook Outlines Evolving Privacy Tools on Data Privacy Day*, SOCIAL MEDIA TODAY Jan. 29, 2020, (fhttps://www.socialmediatoday.com/news/facebook-outlines-evolving-privacy-tools-on-data-privacy-day/571246/). Given the widespread perception that data on Facebook remains private and Facebook's messages to its users that the users' privacy is highly valued, it is unreasonable to expect individuals to know that the contents of their private messages on Facebook are truly not private, but rather that Facebook in continuously searching and analyzing the data and sending certain data on to the government.

The second question outlined by the government, whether Facebook acted as a government agent, is the pertinent area where the record is incomplete. It is because of

3

this incompleteness that live testimony from Facebook is necessary.[3] The government states that "every other court to consider the same argument presented by Bebris – that an electronic service provider ("ESP"), like Facebook here, was a "government agent" when it reported child pornography to NCMEC – has rejected the argument." (Doc. #54 at 4). This assertion is misleading. Bebris is unaware of any case law published regarding *Facebook's* governmental status with regards to NCMEC and searching for alleged contraband, and this issue has certainly never been heard by the Seventh Circuit or the Eastern District of Wisconsin. While case law does exist regarding *other* ESPs, this Court cannot summarily group Facebook with other entities. ESPs are wide-ranging in scope, funding, and technological capabilities. Facebook is undeniably one of the largest and most powerful ESPs in the United States and the world. The extent of its cooperation with the government is unknown, and thus Facebook must provide live testimony in this case.

Finally, NCMEC is an agent of the government. Although the Government does not fully address this issue in its supplemental response brief (*id.*), Bebris reasserts his arguments laid forth in all prior briefings and oral arguments regarding the governmental status of NCMEC so as to avoid waiver.

In sum, contrary to the government's contention, the record is incomplete with respect to this matter, and must be completed to allow the Court to properly address the

---

[3] Should the Court decide that the record is complete, Bebris submits the alternative arguments below that Facebook acted as a government agent.

issues at hand. Particularly, the Court must hear live testimony from Facebook in order to determine whether Facebook acted as a government agent.

## II. Alternatively, Facebook is an Agent of the Government.

While Bebris maintains his argument that Facebook must give live testimony for the Court to properly consider whether Facebook acted as an agent of the government, in the event the Court rules that Facebook need not testify, Bebris submits the following argument. Contrary to the government's assertions, the government is aware of and acquiesces to Facebook's conduct when it searches images uploaded to its webpage for hash values associated with contraband. Furthermore, Facebook's actions were motivated in part by the government.

### a. The government is aware and acquiesces to Facebook's conduct in searching images on its webpage for alleged contraband.

As established above, in past pleadings, and by Shehan's testimony on behalf of NCMEC, NCMEC is a government agent. As a government agent, NCMEC has extensive knowledge of Facebook's practices when it comes to searching private messages on its webpage. Shehan testified that NCMEC conducts frequent trainings and is in regular communication with Facebook regarding the search for alleged contraband. (Tr. 42:4-6) (NCMEC and Facebook are in contact "at least monthly"); (Tr. 45:1-3) (NCMEC spends "quite a bit of time" training Facebook). While the intricate details of Facebook's activities are unknown, NCMEC is certainly aware that Facebook is conducting these searches, and the general manner in which they are doing so.

5

NCMEC not only has this knowledge, but also acquiesces to Facebook's conduct. This is shown through the continuous use of CyberTipline Reports from Facebook and the ongoing trainings. (See Tr. 25:18-22) (generally, Facebook submits CyberTipline Reports to NCMEC); (Tr: 42:4-6); (Tr. 45:1-3). NCMEC also allows Facebook the option to auto-fill certain sections of the CyberTipline, including the question of whether an individual at Facebook viewed the photograph in question. (Tr. 25:11-17). Furthermore, NCMEC considers Facebook a full-fledged partner in their mission to combat child pornography. (See, *e.g.*, Tr. 24:5-8) ("So in many ways they are, you know, a partner to our organization and they help us to better fulfill our mission.") This close relationship and trust exemplifies the government's acquiescence to Facebook's actions.

Finally, the government raises the argument that Bebris ignores the evidence adduced at the motion hearing. (Doc. #54 at 7). This is inaccurate. Not only did Bebris address the evidence adduced at the motion hearing in his supplemental brief, but Bebris explicitly pointed out the questions raised by Shehan's testimony that only Facebook can answer. (See generally, Doc. #49; see also, Doc. #49 at ¶¶ 5,6, Ex. A, B).

In sum, the government is aware of and acquiesces to Facebook's conduct in searching images on its webpage for alleged contraband.

**b. Facebook's actions were motivated in part by the government.**

Facebook asserts that "[i]n his supplemental brief, Bebris contends that because Facebook refers child pornography content found on its website to NCMEC, Facebook likely acted with the goal of assisting law enforcement." (Doc. #54 at 8). In reality, Bebris's argument is much more complex than the government acknowledges. It is not

6

simply the fact that Facebook submits CyberTipline Reports to NCMEC containing alleged contraband; it is a combination of other factors as well. For instance, it is the close relationship between Facebook and the government, in-kind and financial funding Facebook provides to NCMEC, and Facebook's use of NCMEC's Hash Value Database/PhotoDNA Signatures.[4] Additionally, though not dispositive, the laws requiring cooperation between ESPs and NCMEC are a factor that this Court should consider.

The cases cited by the government to support its argument that Facebook's actions were not motivated by the government are *United States v. Ginglen*, 467 F.3d 1071 (7th Cir. 2006), *United States v. Koenig*, 856 F.2d 843 (1988) and *United States v. Shahid*, 117 F.3d 322 (1997). (Doc. #54 at 5-7). Each of these cases held ultimately that individuals did not act as a government agent because they acted partially for an interest other than the government. See generally, *Ginglen*, 467 F.3d 1071, *Koenig*, and *Shahid*. However, each of these cases is distinguishable from the present case and none of the cases demand that an entity operate solely with the purpose of aiding the government before a court may consider it a government agent.

In *Ginglen*, the Seventh Circuit found that two brothers did not act as government agents when they conducted a search of a home in part because the brothers did not notify the government before conducting the search. 467 F.3d at 1075. Here, as explained above, the government was well aware of Facebook's search of citizen's private data. Next, the

---

[4] Notably, these are all areas that Facebook choose to not address in its declarations.

*Koenig* court held that a Federal Express employee did not act as a government agent when conducting a search of a package when the government exercised no form of control whatsoever over the Federal Express employee. *Koenig*, 856 F.2d at 849. In this case, as explained in Bebris's prior filings, the government does have control over Facebook to the extent that Facebook is required by law to report any contraband it may find. (See, *e.g.*, Doc. #30 at 14-15). Last, the *Shahid* court noted that a mall security guard did not act as a government agent when detaining a shopper when the government did not know of or acquiesce to the security guard's actions. *Shahid*, 117 F.3d at 326. Again, as explained above, here the government both knew of and acquiesced to Facebook's conduct when it search Bebris's private Facebook messages.

Furthermore, none of the aforementioned cases address ***Facebook's*** relationship with the government. Again, Bebris is unaware of any published cases regarding that specific relationship. As the government did not cite any cases regarding the relationship between Facebook and law enforcement, the government is also clearly unaware of any such case law. As discussed above, each and every ESP is unique, and it is inappropriate to lump them all together into one category. It is entirely possible that one ESP may have a much closer connection to law enforcement than another, and therefore may be more motivated to act based on the government's objectives. To suggest otherwise ignores the reality of corporations and the United States Government.

In conclusion, Facebook's actions were motivated at least in part by law enforcement's objectives. This, coupled with the fact that the government had knowledge

8

of and acquiesced to Facebook's conduct shows that Facebook acted as a government agent in this case.

**III.     Facebook's Various Declarations are Insufficient and Unreliable.**

In his reply brief regarding non-party Facebook's motion to quash, Bebris addresses a majority of the statements made by the government in its response brief. Bebris asserts and incorporates his arguments made in the reply brief regarding the motion to quash inasmuch as they apply to the government's assertions. However, there are a few arguments advanced by the government which require direct reply in this brief.

First, the government attempts to fault Bebris for filing his supplemental brief before Facebook provided the Court with its supplemental declaration. (Doc. #54 at 9) ("Of note, Bebris made these arguments before Facebook filed its supplemental declaration.") The Court set a deadline of December 23, 2019, for Bebris to submit his supplemental brief, and Bebris did submit his brief on that day. (Doc. #49). Before submitting his brief, Bebris attempted to contact Facebook with a second set of questions addressing the issues raised at the motion hearing. (Doc. #49-1, ¶¶5, 6, Ex. A, B). Facebook did not respond to Bebris in any manner or provide Bebris with any additional information, and instead filed its supplemental declaration on January 10, 2020. (Doc. #53).

Second, contrary to the government's claim, Facebook did not "squarely answer[] the question of whether a person at Facebook reviewed the three images at issue before Facebook sent that information to NCMEC." (Doc. #54 at 10). Facebook did not answer the questions of who at Facebook allegedly looked at the images, when exactly the

9

individual at Facebook allegedly looked at the images[5], how this individual allegedly looked at the images, or whether the field in the CyberTipline Report was auto-filled. Each of these questions is pertinent to determining the full scope of Facebook's review of the alleged contraband.[6]

Additionally, the government heavily relies on the claims made in Facebook's declarations and attempts to determine what Facebook "likely" meant by certain statements. (Doc. #54 at 12). The purpose of the judicial system is to discovery the truth; it is a shared goal of the courts and the parties. This truth-seeking function is exemplified in various Supreme Court Case Law. See, *e.g.*, *Swidler & Berlin v. United States*, 524 U.S. 399, 411 (1998) (O'Connor, J., dissenting) ("We have long recognized that '[t]he fundamental basis upon which all rules of evidence must rest – if they are to rest upon reason – is their adaption to the successful development of the truth.'") (quoting *Funk v. United States*, 290 U.S. 371, 381 (1933)); see also *James v. Illinois*, 493 U.S. 307, 311 (1990) (discussing the truth-seeking function of a criminal trial as it relates to the exclusionary rule) (citing *Harris v. New York*, 401 U.S. 222, 225 (1971)). By attempting to read the mind of a third-party and assume that the third-party acted legally without any question, the government is hindering the truth-finding mission of the Court.

---

[5] Facebook merely summarily asserts that "a person viewed the images immediately before they were submitted to NCMEC." (Doc. #53, ¶2, Ex. A). Facebook does not provide the time that this individual allegedly viewed the image, nor does Facebook provide any foundational information for the Court to find this statement credible.

[6] The government asserts that, in the alternative, PhotoDNA is the equivalent of a private search. This arguments fails as Facebook, the entity using PhotoDNA to conduct the search, is a government agent.

For the above reasons as well as those included in Bebris's reply brief regarding Facebook's motion to quash, Facebook's declarations are insufficient and unreliable, and the Court should require Facebook to provide live testimony on the issues.

**IV.    Law Enforcement did not Act in Good Faith.**

To begin, in order for the good faith exception to even potentially apply to the facts of this case, the Court would need to find that Facebook did not act as a government agent but rather conducted a private search. Contrary to the government's position, if the Court finds Facebook did not act as a government agent, the good faith exception would still not apply to the expanded search by NCMEC.[7]

The key portion of the CyberTipline Reports to determine whether an expansion of a private search occurred is the question "Did Reporting ESP view entire contents of uploaded file?" As Shehan testified, NCMEC interprets that question to mean whether someone viewed the photo before submitting the CyberTipline Report. (Tr. 32:4-8). However, Shehan also testified that NCMEC willfully turns a blind eye to whether ESPs, and Facebook in particular, have the same interpretation of that question. (Tr. 46:11-13) ("But ultimately it is up to Facebook to give their understanding of how they use that field [of stating someone viewed the alleged contraband]. They're the ones that can ultimately attest to their usage."); (Tr. 55:18-23) ("I do not think [Mr. Barry] viewed the uploaded file . . . That's something Facebook would have to provide you."); (Tr. 56:8-10)

---

[7] It is the government's burden to establish that officers acted with objectively reasonable good faith in expanding any private search. See *United States v. Leon*, 468 U.S. 897, 924 (1984) ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.") The government has failed to show objectively reasonable good faith in this case.

11

("I do not know their internal processes or, you know, when someone within their company viewed that particular file.") Willfully turning a blind eye is not acting in good faith and any argument that law enforcement acted in good faith in this case in meritless.

## CONCLUSION

For the above-stated reasons, those articulated in Bebris's original and supplemental briefs to the Court, and those stated in Court, this Court should grant Bebris's motion to suppress evidence and statements that were fruit of the illegal searches.

Dated this 3rd day of February, 2020.

        Respectfully submitted,

        GIMBEL, REILLY, GUERIN & BROWN LLP

        By:
          /s/Jason D. Luczak
          JASON D. LUCZAK
          State Bar No. 1070883
          Email: jluczak@grgblaw.com
          BRIANNA J. MEYER
          State Bar No. 1098293
          Email: bmeyer@grgblaw.com
        Attorneys for Defendant

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440
*crim/bebris,alexander/reply gov supplemental br 2020-01-29*