UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 19-CR-02

vs.

ALEXANDER P. BEBRIS,

                Defendant.

---

## DEFENDANT'S SUPPLEMENTAL REPLY BRIEF REGARDING NON-PARTY FACEBOOK'S MOTION TO QUASH

---

Alexander P. Bebris, by and through his attorneys Gimbel, Reilly, Guerin & Brown LLP, submits the following supplemental reply brief in opposition of non-party Facebook's motion to quash. This reply brief will address the arguments laid forth in Facebook's response brief filed on January 10, 2020.

### ARGUMENT

In its response brief, Facebook argues (1) that its two declarations are sufficient for the Court to rule whether Facebook acted as a government agent in this case; and (2) that the compulsory process clause does not require live testimony from Facebook in this case. Contrary to Facebook's arguments contained in its response brief, the company's declarations are insufficient because they fail to address the relevant issues. Furthermore, the compulsory process clause requires Facebook to provide live testimony.

1

**I.      Facebook's Declarations are Insufficient.**

Facebook asserts that the information provided in its declarations are sufficient for the Court to determine whether Facebook acted as a government agent in this case. (See Doc. #52 at 7-14). This is inaccurate. Facebook provided broad sweeping statements which do not provide the Court with the complete picture. Additionally, in its filings, Facebook makes much about the fact that it supplied the parties and the Court with two declarations. In reality, the second filed declaration is merely an edited version of the first declaration. The changes are as follows:

**Declaration of Michael Francis Xavier Gillin, II**

I, Michael Francis Xavier Gillin, II, declare as follows:

1. I am employed by Facebook, Inc. ("Facebook"), headquartered in Menlo Park, California, as a Project Manager for Safety on the Community Operations team. In my role, I am responsible for the enforcement of child safety policies on the platform.

2. The information in this declaration is based on my personal knowledge and information that I have access to in the normal course of my job.

3. Facebook has an independent business purpose in keeping its platform safe and free from harmful content and conduct, including content and conduct that sexually exploits children. As our Community Standards explain, "We do not allow content that sexually exploits or endangers children. When we become aware of apparent child exploitation, we report it to the National Center for Missing and Exploited Children (NCMEC), in compliance with applicable law." Our community Standards regarding Child Nudity and Sexual Exploitation of Children are publicly available on our website here: https://www.facebook.com/communitystandards/child_nudity_sexual_exploitation.

4. Facebook identifies content and conduct that might violate its Community Standards in various ways. As set out below, CyberTipline Reports 39932621 and 40017882 were based on images Facebook identified using a software called PhotoDNA, which Facebook did not create but instead licensed

2

directly from Microsoft, another private company. Facebook uses PhotoDNA software to identify potential child exploitation content, as well as to identify other types of violations of its Terms of Service or Community Standards. Information about how PhotoDNA works is publicly available, for example, at https://www.microsoft.com/en-us/photodna. Facebook did not license the software from NCMEC or anyone other than Microsoft directly.

5. Facebook does not receive training from NCMEC regarding the use or operation of the PhotoDNA software or its processes for reporting to the CyberTipline, meaning Facebook does not receive training from NCMEC on Facebook's own internal processes, including Facebook's use of PhotoDNA or Facebook's process of determining the content of its CyberTipline reports. NCMEC may train or educate service providers, including Facebook, on the technical specifications and operation of the CyberTipline.

56. I have reviewed our recordings regarding CyberTipline Reports 39932621 and 40017882. On September 7, 2018, the Alexander Bebris account (UID 100025567790181) uploaded two images via Facebook Messenger which were initially identified by PhotoDNA, the software described above. After PhotoDNA initially identified these images, These these photos were reviewed by a person and reported to NCMEC (CyberTipline Report 39932621). On September 9, 2019, the Alexander Paul account (UID 1648231670) uploaded one image via Facebook Messenger which was identified by PhotoDNA. After PhotoDNA initially identified this image, The the photo was reviewed by a person and reported to NCMEC (CyberTipline Report 40017882).

76. Although initially identified by PhotoDNA, a person viewed the images immediately before they were submitted to NCMEC. This is reflected in the CyberTipline Reports themselves where the reports document "Did reporting ESP view the entire contents of uploaded files?" and the report reflects an answer of "Yes." When Facebook responds to this question with an affirmative "Yes," it means that a person viewed the image or file submitted in the CyberTipline report.

87. Facebook has no record of receiving legal process from the Government for the account holders associated with the accounts reported in CyberTipline Reports 39932621 and 40017882. Prior to receipt of this subpoena, Other other than the initial submission of these two CyberTipline Reports, I am not aware of any other communications between Facebook and NCMEC regarding these reports leading up to submission of the two CyberTipline ReportsFacebook has identified no records of communication with NCMEC in this matter. Similarly, other than its counsel's communications with the Government about the defense subpoena, Facebook has identified no records of communications with the Government regarding the images or content of the CyberTipline reports.

3

(Doc. #41, ¶2, Ex. A; Doc. #53, ¶2, Ex. A). These changes are minimal, at best, and attempt to "clarify" statements in the original declaration that were contradicted by Shehan's testimony on behalf of NCMEC. Furthermore, Facebook's declarations are insufficient because they ignore the relevant issues and refuse to answer pertinent questions to aide the Court in determining whether Facebook acted as a government agent.

### a. Facebook has failed to address the relevant issues.

The ultimate issue at hand is whether Facebook acted as a government agent. Facebook's original declaration painted a picture that it had no contact with NCMEC regarding PhotoDNA or the search of photos uploaded and shared through Facebook. (See Doc. #41, ¶2, Ex. A). Shehan then testified that, in fact, there is a close relationship between the two entities. (See, *e.g.*, Tr. 24:5-8) ("So in many ways they are, you know, a partner to our organization and they help us to better fulfill our mission.") As shown above, Facebook attempted to remedy the false statements in its original declaration with a slightly modified "supplemental" declaration. (Doc. #53, ¶2, Ex. A).

Although in its second declaration Facebook admitted that it does, in fact, have contact with NCMEC (*id.*), Facebook still failed to address other prevalent topics that would allow the Court to answer the ultimate question of whether Facebook acted as a government agent. These topics include but are not limited to:

- whether Facebook utilizes NCMEC's Hash Value Database/PhotoDNA Signatures or whether Facebook utilizes a separate hash value database;
- Facebook's policies and procedures regarding the use of PhotoDNA;

4

- which Facebook employee was responsible for generating the two CyberTipline Reports in question;

- whether Facebook auto-fills any fields in CyberTipline Reports and the default information that is auto-filled;

- whether a human analyzes the alleged contraband or whether artificial intelligence analyzes the alleged contraband;

- the extent of Facebook's in-kind and financial support to NCMEC; and

- details concerning the technology coalition.

These topics, along with others, were submitted to Facebook prior to the defense's supplemental brief filing deadline. (See Doc. #49-1 at ¶¶ 5, 6, Ex. A, B). Facebook did not respond to Bebris, and instead filed its insufficient supplemental brief over two weeks after Bebris's initial filing deadline. In sum, Facebook has patently failed to address the prevalent issues in its declarations.

**b. The additional information sought by Bebris is neither invasive nor unnecessary.**

Facebook argues that the questions submitted to it by the defense were over-reaching and unreasonable. (Doc. #52 at 10-14). However, Facebook ignores the evidentiary standard for relevancy when making such argument.

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Fed. R. of Evidence 401.

5

As outlined in Bebris's supplemental brief, the defense submitted multiple sets of questions to Facebook in attempts to stipulate to the company's testimony in lieu of requiring a live witness. (See generally, Doc. # 49; see also Doc. #40 at ¶¶5, 6, Ex. A, B). A simple review of those questions shows that the questions were targeted, limited, and relevant to the issues in front of this Court. (See Doc. #49-1 at ¶¶ 5, 6, Ex. A, B). The questions all related to evidence that would tend to make the fact that Facebook acted as a government agent more or less likely. Whether Facebook acted as a government agent is of extreme consequence when determining Bebris's motion to suppress. The questions did not include any inquisitions into trade secrets, financial documents, future plans, company structure, or any other irrelevant intellectual property. (*Id.*). Rather, the questions were aimed at the issues outlined above, which NCMEC explicitly could not testify to and are necessary to determine whether Facebook acted as a government agent.

Therefore, the additional information sought by Bebris is neither invasive nor unnecessary. Rather, the information sought was highly relevant to Bebris's motion to suppress. That, combined with the fact that Facebook failed to address the relevant issues in its declarations, shows that the declarations are insufficient.

Finally, Facebook alleges that "Defendant's assertion that Facebook's declaration is 'unreliable' is misplaced." Bebris reasserts and incorporates the arguments contained in his supplemental brief with regards to Facebook's unreliableness as to avoid waiver.

6

**II. The Compulsory Process Clause Does Require the Live Testimony of Facebook.**

Facebook's entire argument regarding the compulsory process is centered around their claim that any and all live testimony it would give would be merely duplicative.[1] (Doc. #52 at 14-17). As addressed above, this is a false characterization of the desired testimony. The testimony sought from Facebook centers around questions that NCMEC could not answer. Facebook also asserts that the details of its partnership with NCMEC have no bearing on whether Facebook acted as a government agent. (*Id.* at 17). This is incorrect. The details of the partnership are tantamount to the Court's decision, as no one lone factor determines whether an actor was an agent of the government. *United States v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006) (in ruling whether an actor was a government agent, courts must determine whether the government had knowledge of and acquiesced to the actor's search, and may consider other factors as well).

Although Facebook's response relies on false premises, Bebris reincorporates and asserts the arguments laid forth in his supplemental brief regarding the compulsory process clause so as to avoid waiver.

**CONCLUSION**

For the above-stated reasons, those articulated in Bebris's original and supplemental briefs to the Court, and those stated in Court, this Court should compel Facebook to produce live testimony.

---

[1] Facebook similarly argues that Bebris's Rule 17 subpoena should be quashed because "the information Defendant seeks to elicit via live testimony is all duplicative or irrelevant." (Doc. #52 at 14). As shown throughout this brief, that is inaccurate. This Court should not quash Bebris's Rule 17 subpoena as Facebook is needed to provide relevant testimony unavailable from any other witness.

Dated this 3rd day of February, 2020.

Respectfully submitted,

GIMBEL, REILLY, GUERIN & BROWN LLP

By:
   /s/Jason D. Luczak
   JASON D. LUCZAK
   State Bar No. 1070883
   Email: jluczak@grgblaw.com
   BRIANNA J. MEYER
   State Bar No. 1098293
   Email: bmeyer@grgblaw.com
Attorneys for Defendant

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440
*crim/bebris,alexander/reply fb supplemental br 2020-01-29*